# In re C-C-, Respondent

*Decided March 23, 2006*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien seeking to reopen removal proceedings based on a claim that the birth of a second child in the United States will result in the alien's forced sterilization in China cannot establish prima facie eligibility for relief where the evidence submitted with the motion and the relevant country conditions reports do not indicate that Chinese nationals returning to that country with foreign-born children have been subjected to forced sterilization in the alien's home province. *Guo v. Ashcroft*, 386 F.3d 556 (3d Cir. 2004), distinguished.

FOR RESPONDENT:  Peter D. Lobel, Esquire, New York, New York

BEFORE: Board Panel: COLE, FILPPU, and PAULEY, Board Members.

PAULEY, Board Member:

This case was last before us on April 29, 2005, when we dismissed the respondent's appeal from an Immigration Judge's denial of her applications for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231(b)(3) (2000), and for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46,  39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"), pursuant to 8 C.F.R. § 1208.16(c) (2005).  On July 25, 2005, the respondent, a native and citizen of China, filed a motion to reopen based on the birth of her second child, who was born in the United States.[1]  Inasmuch as the respondent's motion was filed within 90 days of our April 29, 2005, decision, we find that

---

[1] The respondent's first child, a daughter, was born in China and is in that country with the respondent's mother.  We note that the respondent did not indicate whether she intends to take her United States citizen child to China if she is required to return to that country, although we will assume such an intention for purposes of adjudicating the motion.

the motion is timely filed.  *See* 8 C.F.R. § 1003.2(c)(2) (2005).  The motion to reopen will be denied.

   In order for a motion to reopen to be granted, the respondent must establish prima facie eligibility for relief.  *See Matter of Coelho*, 20 I&N Dec. 464, 472 (BIA 1992).  The United States Court of Appeals for the Second Circuit has stated that a showing of prima facie eligibility for relief is made when there is "'a realistic chance'" that the alien will be able to establish eligibility for relief.  *Poradisova v. Gonzales*, 420 F.3d 70, 78 (2d Cir. 2005) (quoting *Guo v. Ashcroft*, 386 F.3d 556, 563-64 (3d Cir. 2004)).  In her timely motion, the respondent requests reopening based on the birth of her second child and her assertion that she will be sterilized if she returns to China.[2]  The respondent contends that we should reopen the proceedings in light of *Guo v. Ashcroft*, *supra*.  However, that decision of the Third Circuit is not binding case law in the Second Circuit, in whose jurisdiction this case lies.  Moreover, we find that *Guo v. Ashcroft* is distinguishable from the instant case.

   The alien in *Guo v. Ashcroft*, *supra*, had two children who were born in the United States about a year and a half apart.  The record reflects that the respondent's first child was born in 1998 and her second child was born more than 6 years later in 2005.  This age differential is significant because it bears on the objective reasonableness of the respondent's fear that she will be found to be in violation of China's population control policy and will be subjected to forced sterilization.  China's population control policy generally allows individuals to seek permission to have a second child after a 4-year period.  *See* Bureau of Democracy, Human Rights, and Labor, U.S. Dep't of State, *China Country Reports on Human Rights Practices - 2005* (Mar. 8, 2006), *available at* http://www.state.gov/g/drl/rls/hrrpt/2005/61605.htm [hereinafter *2005 Country Reports*]; *see also* Committees on Foreign Relations and International Relations, *Country Reports on Human Rights Practices for 2004* 682, 694 (Joint Comm. Print 2005) [hereinafter *2004 Country Reports*].  Because the respondent's children were born more than 6 years apart, her situation is clearly different from that of the alien in *Guo v. Ashcroft*, notwithstanding that she has not received permission for a second child.

   The Third Circuit found in *Guo v. Ashcroft*, *supra*, at 565, that an affidavit by a retired demographer, Dr. John Aird, who is recently deceased, was sufficient to establish a prima facie case for reopening, noting that the affidavit was in large part devoted to discrediting the Department of State's April 1998 *Profile* on China.  *See* Bureau of Democracy, Human Rights and

---

[2] *Cf. Wang v. BIA*, 437 F.3d 270 (2d Cir. 2006) (affirming the Board's denial of an *untimely* motion to reopen based on the birth of United States citizen children during a 4-year period of unlawful presence after the alien was ordered removed).

Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* (Apr. 1998). The respondent has also submitted an affidavit from Dr. Aird with her motion to reopen. For the following reasons, however, we find that the affidavit does not establish the prima facie showing of eligibility for asylum that is required for reopening.

We first observe that Dr. Aird's affidavit is not based on personal knowledge of conditions in China, but rather on a review of documents concerning events and practices in that country. In that regard, the affidavit provides only generalized statements that Chinese citizens who entered the United States illegally would be subject to the same punishments that apply to Chinese couples who violate the family planning laws in China. No example of a woman being sterilized because she returned to China with a child born abroad is cited in the affidavit. Furthermore, the affidavit does not provide any specific evidence of forced sterilization in the case of an alien with two children returning to the Zhejiang province, where the respondent resided.

The affidavit by Dr. Aird mainly cites information from the 1980s and 1990s to support the conclusion that the respondent would be forcibly sterilized upon returning to China because of her foreign-born child. For example, the affidavit refers to an incident in 1988 when a Chinese couple living abroad asked for permission to give birth to a second child and was told by family planning officials that their unauthorized child could jeopardize their factory's plans for expansion and result in punishment to the workforce. The affidavit also includes a citation to an exchange of official correspondence between the Fuzhou municipal family planning authorities and the Fujian provincial family planning authorities as to what should be done about a couple who had returned to China with a second child born in the United States without permission. According to the affidavit, the couple was told that they were subject to sanctions and penalties applied under the Fujian provincial family planning regulations. However, the affidavit contains no specific information on the application of the family planning policy to Chinese citizens returning to the Zhejiang province with children born abroad.

The Aird affidavit only briefly discusses the *2004 Profile of Asylum Claims and Country Conditions* as it relates to citizens returning to China with foreign-born children. *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 26 (June 2004) [hereinafter *2004 Profile*]. The affidavit takes issue with the statement in the *2004 Profile* that American diplomats are unaware of any cases in which returnees from the United States were forced to undergo sterilization upon their return. We note, however, that this statement is consistent with reports on China's population control policy from other

governments.[3] Moreover, although the affidavit claims that forced surgeries occur, again, it contains no evidence that returnees have been sterilized.

We also note that the latest documents on country conditions issued by the State Department conflict with the views of Dr. Aird.[4] *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *China: Profile of Asylum Claims and Country Conditions* 28 (Oct. 2005) [hereinafter *2005 Profile*]. The *2005 Profile* states that it is now national policy that no action will be taken against students where both parents resided overseas for at least a year and have two children when they return to China. Furthermore, children living permanently overseas are not counted for birth planning purposes when their parents return to China.

According to the *2005 Profile*, "Generally, unless one of the parents is an 'overseas Chinese' (i.e. has residency rights in another country), a family with a U.S.-born child or children receives no special treatment under family

---

[3] In October 2005, the United Kingdom's Home Office published a country of origin report regarding China, which was updated in November 2005. *See* United Kingdom Home Office Science and Research Group, Country of Origin Information Service, *China-Country of Origin Report* (2005), http://www.homeoffice.gov.uk/rds/pdfs05/china_091105.doc. The report does not list any instances of forced sterilizations of Chinese citizens who were returning to China with a child born abroad. *See id*. at 123-24.

Furthermore, a country of origin research report by the Research Directorate of the Immigration and Refugee Board of Canada provides that "[i]nformation on penalties faced by couples returning to China from overseas who are in violation of family planning regulations was scarce among the sources consulted by the Research Directorate other than provincial family planning regulations available to the Directorate in English." Immigration and Refugee Board of Canada, Research Directorate, *China: Penalties faced by couples returning from overseas who are in violation of family planning regulations (2001-2005)* (2005), http://www.irb-cisr.gc.ca/en/research/ndp/ref/?action=view&doc=chn100385e. The report indicates that 2002 Zhejiang Province Population and Family Planning Regulations provide that "[w]here one spouse is an alien, a compatriot from Hong Kong, Macao or Taiwan, or an overseas Chinese, returned overseas Chinese or Chinese studying abroad, relevant State regulations shall be followed in the implementation of birth policies." *Id*. The report further provides that the Zhejiang regulations stipulate that "[o]ne child for each couple is advocated. Where the provisions in these Regulations are satisfied, a couple can request the birth of a second child after necessary approval. Birth of a child is strictly prohibited in the case where the couple does not qualify under law." *Id*. However, the report also indicates that information on the enforcement of provincial family planning regulations is scarce and that implementation of family planning regulations "varies from region to region." *Id*. We take administrative notice of these reports from the United Kingdom and Canada. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (2005); *see also Yang v. McElroy*, 277 F.3d 158, 163 n.4 (2d Cir. 2002).

[4] We will take administrative notice of these reports. *See* 8 C.F.R. § 1003.1(d)(3)(iv).

planning laws." *Id.* at 28. Nevertheless, the *2005 Profile* indicates that American diplomats in China are unaware of "any cases in which returnees from the United States were forced to undergo sterilization procedures on their return." *Id.* Lastly, the *2005 Profile* notes that it may be difficult for children without a Chinese household registration to enroll in public school. Thus, although the reports indicate that some economic sanctions might be imposed on a woman returning to China with two children, they contradict the respondent's claim that there is a "realistic chance" that she would be forcibly sterilized. *Poradisova v. Gonzalez*, *supra*, at 78.

The Department of State's country reports on China do not discuss the application of China's family planning policy to women returning to that country with children born abroad. *See 2005 Country Reports.* However, they do provide that China's population control policy relies on "education, propaganda, and economic incentives, as well as more coercive measures such as the threat of job loss or demotion and social compensation fees." *2005 Country Reports*; *see also 2004 Country Reports*, *supra*, at 695. They also observed that central government policy "formally prohibits the use of physical coercion to compel persons to submit to abortion or sterilization." *2005 Country Reports*; *see also 2004 Country Reports*, *supra*, at 696. The *2005 Country Reports* noted that some reports of physical coercion to meet birth targets continued, although the respondent's province was not mentioned among those which impose stringent measures to deal with out-of-plan pregnancies.

Having considered all of the relevant evidence, we find that the State Department reports are more persuasive than the Aird affidavit in determining the chances that the respondent will be sterilized if she returns to China. *See Wang v. BIA*, 437 F.3d 270, 276 (2d. Cir. 2006) (noting that "a balancing of the 2004 Country Report against the Aird affidavit's criticism of that report . . . would lead to the conclusion . . . that [the alien] has not shown he would face anything more than economic sanctions if returned to China").

Lastly, we note that the Second Circuit recently affirmed our unpublished decision finding that an alien with two children born in the United States failed to establish a well-founded fear of future persecution, although we acknowledge that the alien in that case did not introduce an affidavit from Dr. Aird or comparable evidence. *See Huang v. United States INS*, 421 F.3d 125, 128-29 (2d Cir. 2005) (noting that the Board permissibly relied on a country conditions report which indicated that there were no reports of a national policy with respect to foreign-born children and that couples returning to China with more children than they would have been permitted at home are "at worst, given modest fines"); *see also Guan Shan Liao v. United States*

*Dep't of Justice*, 293 F.3d 61, 71-72 (2d Cir. 2002) (holding that background evidence concerning the birth control policy in the alien's home province did not support a well-founded fear that either he or his wife would be sterilized).

Based on the foregoing considerations, we find that the respondent has not established prima facie eligibility for asylum, withholding of removal, or protection under the Convention Against Torture. Accordingly, her motion to reopen will be denied.

**ORDER:**  The motion to reopen is denied.