

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2007

# Qiu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3295

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Qiu v. Atty Gen USA" (2007). *2007 Decisions.* Paper 1726.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1726

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-3295

YAN YUN QIU,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A95-864-061
(U.S. Immigration Judge:  Honorable Annie S. Garcy)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 11, 2006
Before:  SCIRICA, *Chief Judge*, SLOVITER and BARRY, *Circuit Judges*

(Filed   January 31, 2007 )

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Yan Yun Qiu petitions for review of the Board of Immigration Appeals' June 2,

2005, order denying her motion to reopen her case.  We will deny the petition and affirm

the BIA's order.

I.

Qiu, a native and citizen of China, entered the United States without being inspected by an immigration officer in August 2001.  In June 2002, she filed an asylum application contending she had been persecuted on account of her political opinion, she had been forced by Chinese authorities to have an abortion in 1999, and she would be fined, jailed, and tortured by the Chinese government for her illegal departure if she returned to China.  At a hearing before an Immigration Judge in October 2002, Qiu conceded her removability.  At a hearing in November 2003, another IJ denied Qiu's applications for asylum, withholding of removal, and protection under the Convention Against Torture.  The IJ ordered Qiu removed to China.

In her November 6, 2003 decision, the IJ stated Qiu's entire application hinged on whether Qiu could credibly show she was subjected to a forced abortion in China in 1999. In support of that contention, Qiu submitted a September 18, 2002 letter from a certified nurse midwife indicating Qiu had given birth to a daughter in the United States and had reported having a pregnancy forcibly terminated in China on August 13, 1999.  The IJ also considered a 1998 State Department report, *China: Profile of Asylum Claims and Country Conditions*.  The IJ found Qiu's contention lacked credibility because her account was inconsistent with the *Profile* and not supported by sufficient evidence, and because she found Qiu not forthcoming about who had paid to have her smuggled into the United States.  The IJ also declined to exercise her discretion in Qiu's favor, stating there

2

was no evidence either that Qiu would be forbidden from having a second child if deported to China, or that Qiu and her husband even wanted to have more children. The IJ also stated Qiu had mentioned no fear of torture in the form of sterilization if deported to China, and any such contention would have been unsupported because Qiu only had one child.

Qiu appealed the IJ's decision to the BIA on November 28, 2003. On February 14, 2005, the BIA affirmed without opinion. On March 18, 2005, Qiu filed a motion to reopen, in support of which she attached her marriage certificate and the birth certificate of her second child, a son (born in the United States on March 2, 2005). On June 2, 2005, the BIA issued a per curiam order denying the motion to reopen. The BIA found Qiu had failed to make a prima facie showing of eligibility for asylum because her motion was not accompanied by evidence to support her fear of persecution in China as a result of the birth of children in the United States. Furthermore, the BIA found the *Profile* did not "reflect a national policy by the Chinese government regarding the application of its coercive population control policies to parents of foreign-born children" or "establish that any sanctions that have been imposed on parents of foreign-born children at the local level rise to the level of persecution." (A.R. 2.) Qiu petitions for review of the BIA's order.

The BIA had jurisdiction over Qiu's motion to reopen under 8 C.F.R. § 1003.2(c). We have jurisdiction over her timely petition for review under 8 U.S.C. § 1252.

3

Motions to reopen are granted "only under compelling circumstances." *Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004). The Supreme Court has noted the Attorney General has broad discretion to grant or deny motions to reopen, and that they are "disfavored . . . . This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992). Accordingly, we review the denial of a motion to reopen for abuse of discretion, and will only disturb the BIA's decision if it is arbitrary, irrational, or contrary to the law. *Guo*, 386 F.3d at 562.

II.

Qiu contends the BIA erred as a matter of law by applying an erroneous burden of proof standard to determine whether she had made a prima facie showing of a well-founded fear of persecution. Specifically, Qiu contends the BIA "required Qiu to prove that *there exists* a pattern or practice of persecution of persons situated similarly to herself, rather than showing a 'reasonable likelihood' of proving such a claim." (Petr.'s Br. 5.) An individual seeking to have his or her immigration proceedings reopened by the BIA is required to make a prima facie case of eligibility for asylum. *Caushi v. Attorney General*, 436 F.3d 220, 231 (3d Cir. 2006).[1] In order to make a case for asylum, the applicant must both "establish[]" that there is a "pattern or practice" of persecution on

---

[1] The BIA "has discretion to deny a motion to reopen even if the party moving has made out a *prima facie* case for relief." 8 C.F.R. § 1003.2(a) (2006).

4

account of race, religion, nationality, membership in a particular social group, or political opinion of persons similarly situated to the applicant in the applicant's home country, and "establish[]" his or her own inclusion in and identification with that group of persons "such that his or her fear of persecution upon return is reasonable." 8 C.F.R. § 1208.13(b)(2)(iii) (2006).[2] A prima facie case of eligibility for asylum "'requires the applicant to produce objective evidence showing a reasonable likelihood that he can establish [that he is entitled to relief].'" *Guo*, 386 F.3d at 563 (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 173 (3d Cir. 2002) (alterations in original)).

Qiu contends the BIA engaged in "subterfuge" and held her motion to an excessively rigid standard, requiring her to make the ultimate showing of eligibility for asylum, rather than a prima facie showing. Qiu relies heavily on *Guo*, in which we found the BIA abused its discretion in denying a motion to reopen. *See* 386 F.3d at 564. In *Guo* the BIA had stated the petitioner "ha[d] not *established a well-founded fear* that a reasonable person in her circumstances would fear persecution." *Id.* at 563 (emphasis added). We accordingly found the BIA had improperly required the petitioner to "proceed to the end-game" of establishing eligibility for asylum, *id.* at 564, instead of only requiring a prima facie showing of eligibility. In contrast, the BIA's order here stated Qiu had "failed to demonstrate that she is *prima facie eligible* for asylum." (A.R.

---

[2] Forced abortion and forced sterilization constitute persecution on account of political opinion. 8 U.S.C. § 1101(a)(42) (2000).

2.) (emphasis added). "Agency action is entitled to a presumption of regularity." *Kamara v. Attorney General*, 420 F.3d 202, 212 (3d Cir. 2005). Qiu's arguments are insufficient to overcome that presumption and show the BIA held Qiu's motion to reopen to a higher burden of proof standard than what is required for a prima facie showing. The BIA did not abuse its discretion.

Qiu also contends the BIA acted in an arbitrary and capricious manner by failing to fully consider evidence in the record, principally evidence in the *Profile* on coercive population control practices by the Chinese government, in light of her having two children born in the United States. Qiu initially cites the *Profile* in support of a prima facie showing of eligibility for asylum based on persecution in the form of coercive population control practices such as forced abortion and sterilization, as well as persecution in the form of economic deprivation, particularly because Qiu has two children born in the United States. But she also criticizes the *Profile*'s currency and accuracy. Again, Qiu relies heavily on *Guo*, in which we found the BIA abused its discretion in finding the petitioner's evidence insufficient to make a prima facie case of eligibility for asylum. *See* 386 F.3d at 559. Again, that reliance is misplaced. In *Guo*, we noted proof of a well-founded fear of persecution entails both subjective and objective inquiries, and the petitioner had provided as evidence of the objective element an affidavit from a specialist on Chinese demographic developments and population policy,

6

John Aird.[3] *Id.* at 565–66. We termed the affidavit's critique of the *Profile* "Guo's

principal evidence" on coercive population control practices in China, and concluded that

"where a motion to reopen is accompanied by substantial support of the character

provided by the . . . affidavit," the BIA's reliance on the *Profile* is insufficient to

undermine a petitioner's prima facie showing.[4] *Id.* at 565. Qiu provides nothing in

support of her motion that is comparable to that affidavit. In any event, reliance on the

"oft-cited Aird affidavit," *Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006), in a case such

as Qiu's has been undermined by the BIA.[5] The only new fact Qiu presented in support

_____

[3] The petitioner in *Guo* also attached to her motion to reopen the following: a previous BIA decision in favor of a similarly-situated Chinese applicant; a copy of her second asylum application (which claimed fear of persecution in the form of forced abortion or sterilization, whereas her original asylum application had claimed fear of religious persecution); the birth certificate of one child born after the BIA's initial determination, as well as a letter from an obstetrician describing her current pregnancy; and a marriage certificate. 386 F.3d at 560. Moreover, our grant of Guo's petition was based in part on the fact that the BIA's rejection of her motion to reopen had relied on an IJ's adverse credibility finding on Guo's claimed fear of religious persecution (in support of her first asylum application). Whereas Qiu's motion to reopen is premised on essentially the same facts (save the birth of her son) and arguments as her original application for asylum, Guo's motion to reopen was premised on a new set of facts and theory of persecution.

[4] In *Guo*, we also agreed with the petitioner that the *Profile* might "buttress her *prima facie* case." 386 F.3d at 566. But the affidavit was Guo's primary evidence, and Qiu cannot rely solely on the *Profile* here to make a prima facie showing.

[5] The BIA in *In re C– C–*, 23 I. & N. Dec. 899 (2006), has persuasively argued against further reliance on the Aird affidavit where petitioners for asylum contend they will be subject to persecution in the form of forced abortion or sterilization in China for having foreign-born children. As the BIA notes, Aird (who retired from the Census Bureau more than twenty years ago and died in October 2005) did not base his affidavit on personal knowledge, but rather on documents mainly from the 1980s and 1990s that are in conflict

(continued...)

7

of her motion was the birth of her son, which the BIA took into consideration.[6] The fact that Qiu has two foreign-born children is not sufficient for her to make a prima facie showing of asylum eligibility. As the Supreme Court has noted, BIA determinations are to be upheld if they are supported by reasonable, substantial, and probative evidence, and reversed only if "the evidence not only *supports* [a contrary] conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). The record evidence considered by the BIA in denying Qiu's motion to reopen compels no such conclusion. We conclude the BIA fully considered the record evidence and did not abuse its discretion.

## III.

We will deny the petition and affirm the BIA's order.

---

[5](...continued)
with the more recent 2005 State Department report on conditions in China. *Id.* at 901–02. Further, the Aird affidavit "only briefly discusses" the State Department's 2004 report "as it relates to citizens returning to China with foreign-born children." *Id.* at 201; *see also Wang*, 437 F.3d at 275, 274 (noting the Aird affidavit had been submitted in more than 200 cases since 1993, and rejecting reliance on it where the affidavit "was not prepared specifically for petitioner and is not particularized as to his circumstances").

[6] Qiu also attached a copy of her marriage certificate, but the IJ and the BIA were already aware of the marriage.