**JING SHU JIANG; Xiang Yan Chen, Petitioners**

v.

**\*Alberto R. GONZALES, Attorney General of the United States, Respondent.**

**(\*Substituted pursuant to Rule 43(c), Fed. R.App. P.).**

**No. 04–2000.**

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Jan. 22, 2007.

Filed March 2, 2007.

Theodore N. Cox, Law Office of Theodore N. Cox, New York, NY, for Petitioners.

Linda S. Wernery, Lyle D. Jentzer, William C. Peachey, United States Depart-

ment of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SCIRICA, Chief Judge, FUENTES and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

Jing Shu Jiang and Xiang Yan Chen petition for review of the Board of Immigration Appeals' order reversing an Immigration Judge's decision to grant their consolidated applications for political asylum. We will grant the petition, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.

## I.

Jiang and Chen, both natives and citizens of China, entered the United States without being inspected or admitted by an immigration officer in 1990 and 1996, respectively. Jiang filed his first application for asylum in 1993 and an amended application in 1997, after immigration proceedings against him had begun in December 1996. Chen filed an application for asylum in 1999, before immigration proceedings against her began in February 2000.

The couple married in August 1996 and now have two children born in the United States: a son born in 1997 and a daughter born in 1999. In their most recent amended asylum applications,[1] both Jiang and Chen contend they have a well-founded fear of persecution on account of political opinion should they return to China, because of their two U.S.-born children and their desire to have more children. Specifically, they fear Chen would be subjected to a forced abortion should she become pregnant again and that they would both be subjected to forced sterilization, all in accordance with China's coercive population control policies.

An IJ granted Petitioners' applications for asylum on June 26, 2002, but denied their requests for withholding of removal and relief under the Convention Against Torture. The IJ found Chen had established a well-founded fear of persecution, namely the reasonable possibility she would either (1) be subjected to a forced abortion or sterilization if she returned to China with her two U.S.-born children or (2) be forcibly separated from her children because of China's coercive population control policies if she decided to return to China without them. The IJ found that Jiang would essentially be faced with the same "Sophie's Choice" as his wife, and thus had also established a well-founded fear of persecution. The IJ's findings were based on Petitioners' testimony, State Department documents on China, and a statement by Chen's cousin that his wife had been forcibly sterilized in Petitioners' native Fujian Province in 1998.[2]

The BIA reversed and ordered Jiang and Chen deported and removed, respectively, with a right of voluntary departure.

---

1. Jiang filed his second amended application for asylum in June 2002, naming Chen as a derivative party. Chen filed her first amended application for asylum in June 2002, naming Jiang as a derivative party. Upon Petitioners' motion, an IJ consolidated the cases, despite the fact they were technically different due to a change in law: Jiang was in deportation proceedings, whereas Chen was in removal proceedings.

2. The IJ exercised his discretion to grant the asylum applications despite subsequently disavowed claims in Jiang's earlier asylum applications that he had been persecuted because of student activities. Chen's testimony, too, was inconsistent with her asylum application on this point. The IJ also excused the tardiness of Chen's initial application.

It found there was insufficient record evidence they had an objectively reasonable, well-founded fear of sterilization, because the record failed to establish a national or local policy regarding the application of coercive population control policies to parents of foreign-born children that rose to the level of persecution. The BIA added it was merely speculative that the couple would attempt to have another child in China. Jiang and Chen petition for review of the BIA's order.

The BIA had jurisdiction under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15. We have jurisdiction under 8 U.S.C. § 1252.

Under 8 U.S.C. § 1252(b)(4)(B), "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Factual findings must be upheld if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). This substantial evidence standard applies to determinations whether an alien has a well-founded fear of persecution. *See Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir.2001). "That is, the denial of asylum can be reversed 'only if the evidence presented by [Petitioners] was such that a reasonable factfinder would *have to conclude* that the requisite fear of persecution existed.'" *Butt v. Gonzales*, 429 F.3d 430, 433 (3d Cir.2005) (quoting *Elias–Zacarias*, 502 U.S. at 481, 112 S.Ct. 812) (emphasis added); *see also Abdille*, 242 F.3d at 483–84 ("Under the substantial evidence standard, the BIA's finding must be upheld unless the evidence not only supports a contrary conclusion, but compels it."). We review legal conclusions de novo, subject to established principles of deference. *Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir.2004).

Although our review under the substantial evidence standard is deferential,

we are not foreclosed from determining whether the [BIA] followed proper procedures and considered and appraised the material evidence before it. If the administrative record fails to reveal that such evidence has been fairly considered, the proper course is to remand the case to the INS so that the Service may evaluate such evidence and consider its effect on the application as a whole.

*Sotto v. INS*, 748 F.2d 832, 837 (3d Cir. 1984); *see also Gao v. Ashcroft*, 299 F.3d 266, 272–73 (3d Cir.2002) (noting that "the substantial evidence standard grants significant deference to the determination of the IJ," but concluding that the IJ's "fail[ure] to discuss and evaluate" certain evidence "warrant[ed] reversal and remand"); *Tipu v. INS*, 20 F.3d 580, 583 (3d Cir.1994) ("[A] decision of the BIA may be remanded if it fails adequately to consider the evidence in the record which favors an applicant.").

## II.

Petitioners contend the BIA erred in finding they lacked an objectively reasonable fear of persecution. While we do not reach the substance of the BIA's finding, we conclude the BIA failed to consider material record evidence in making the finding.

The burden of proof to establish eligibility for asylum is on the applicant. *Abdille*, 242 F.3d at 482. An applicant for asylum on the basis of a well-founded fear of future political persecution must establish "both a *subjectively* genuine fear of persecution and an *objectively* reasonable possibility of persecution." *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir.2003). Determination of an objectively reasonable possibility requires ascertaining whether a reasonable person in the alien's circumstances

would fear persecution if returned to the country in question. *Id.* For fear of persecution to be well founded, it need not be more likely than not that persecution will occur. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 431, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). "[A] person who has a well founded fear that he or she will be forced to [abort a pregnancy or undergo involuntary sterilization] or subject to persecution for ... failure, refusal, or resistance [to doing so] shall be deemed to have a well founded fear of persecution on account of political opinion." 8 U.S.C. § 1101(a)(42) (2006).[3] Physical force is not a prerequisite for such a claim-persecution for refusal to comply with coercive population control policies may also take the form of "deliberate imposition of severe economic disadvantage which threatens a petitioner's life or freedom." *Li v. Attorney General,* 400 F.3d 157, 168 (3d Cir.2005).[4]

The BIA's order reversing the IJ's decision granting asylum to Jiang and Chen states:

> [T]he evidence contained in the record of proceeding fails to establish a national policy by the Chinese government regarding the application of its coercive population control policies to parents of foreign-born children. The evidence presented similarly fails to establish any sanctions that have been imposed on parents of foreign-born children at the local level rise to the level of persecution.

(A.R.3) (citation omitted). In making this 2004 finding, the BIA seems to rely solely on a 1998 State Department report, *China: Profile of Asylum Claims.* The *Profile* found that the Chinese government prohibits use of force to compel a person to submit to abortion or sterilization, though it acknowledged that "implementation has varied from place to place," (A.R.487,) and noted "credible reports" of several instances of forced abortions. (A.R.493.) Those reports came from Petitioners' native Fujian Province, where the State Department said that "[t]he policy is generally a one-child policy" in urban areas and a "one-and-a-half child policy in rural areas (e.g., a second child permitted if the first is a female)." (A.R.488, 489.) The *Profile* found that strong persuasion through public pressure was used to induce individuals to comply with coercive population control policies, but did not cite any cases of physical force actually being employed. The *Profile* stated that many couples in Fujian Province who violated population control policies paid fines-it estimated the standard penalty for a second child in the province was twice a family's gross annual income, with increments of 50% for additional unauthorized births. (A.R.493.) As to treatment of couples found to be in violation of coercive population control policies because of foreign-born children, the *Profile* stated:

> There are no reports of a national policy [to impose heavy penalties for violating

---

**3.** Petitioner's reliance on *Guo v. Ashcroft,* 386 F.3d 556 (3d Cir.2004), for the proposition that the birth of two children in the United States is prima facie evidence of asylum eligibility for Chinese parents is misguided for two reasons. First, *Guo* establishes no such bright-line rule, instead reaching a context-specific conclusion on the basis of an expert affidavit. *See id.* at 565. Second, *Guo* dealt with an applicant's motion to reopen her immigration proceedings, which requires a "reasonable likelihood" of asylum eligibility showing that is less demanding than the ultimate "well-founded fear of persecution" standard at issue here. *See id.* at 563–64.

**4.** The economic persecution standard is stringent, though not insurmountable. *See Li,* 400 F.3d at 168 n. 7 ("[T]he economic harm ... must be severe, [but] we do not require complete loss of all means of earning a livelihood, nor do we require evidence of near-starvation, for economic restrictions to rise to the level of persecution.").

the one-child policy], but we do have some anecdotal information. Conversations in Fujian Province[ ] ... indicate that the relevant authorities do not always handle such situations strictly. *At least some couples* that have children in the United States beyond the nominal limits and then return to China are, at worst, given modest fines.

(A.R.498) (emphasis added).

Subsequent State Department reports, included in the record here but apparently not considered by the BIA, provide more recent detail. *1999 Country Reports on Human Rights Practices: China* (released in February 2000) stated that "[d]isciplinary measures against those who violate policies can include fines ..., withholding of social services, demotion, and other administrative punishments that sometimes result in loss of employment." (A.R.434.) It raised the State Department's estimate of the standard penalty for a second child in Fujian Province, listing a new figure of three times a family's gross annual income, payable over twelve to thirteen years. The 2000 report again noted the formal national policy against use of force to compel individuals to undergo forced abortions or sterilizations, but stated that "intense pressure to meet family planning targets has resulted in documented instances in which family planning officials have used coercion, including forced abortion and sterilization, to meet government goals." (A.R.435.) It also recounted the following incident from Fujian Province:

> In 1998 a former Fujian Province local family planning official stated that local authorities in a Fujian town systemat-

ically used coercive practices such as forced abortion and sterilization, detention, and the destruction of property to enforce birth quotas.... [A] senior official did not deny that abuses may have occurred.... There were reports that, after the central government's investigation, local officials in Fujian scaled back the intensity of their family planning enforcement efforts.

(A.R.435.) *China: Country Reports on Human Rights Practices 2000* (released in February 2001) essentially restated the findings of the 2000 report, noting that "[f]ines for giving birth without authorization vary, but they can be a formidable disincentive." (A.R.392.)

Given the disparities between the 1998 *Profile* and the more recent 2000 and 2001 State Department reports, it is not clear why the BIA seemingly did not consider the later reports, which appear more favorable to Jiang and Chen.[5] *See Tipu,* 20 F.3d at 583 ("[A] decision of the BIA may be remanded if it fails adequately to consider the evidence in the record which favors an applicant."). The 2000 and 2001 reports are particularly relevant in light of the Supreme Court's statement that persecution need not be more likely than not for fear of it to be well-founded, *Cardoza–Fonseca,* 480 U.S. at 431, 107 S.Ct. 1207, and our statement that persecution for refusal to comply with coercive population control policies may take the form of deliberate imposition of severe economic disadvantage, *Li,* 400 F.3d at 168. On remand, the BIA should consider the record as a whole in determining whether it es-

---

**5.** The BIA's apparent failure to consider the 2000 and 2001 reports here is particularly striking in light of its rejection elsewhere of this Court's reliance on older evidence inconsistent with more recent State Department reports. *See, e.g., In re C–C–,* 23 I. & N. Dec. 899, 901–02 (2006) (distinguishing *Guo,* 386 F.3d at 563–64, in part because we relied on a demographer's affidavit that "mainly cite[d] information from the 1980s and 1990s," "only briefly discusse[d]" a 2004 State Department report on asylum claims from China, and was in "conflict" with a 2005 State Department report).

tablishes that Jiang and Chen have an objectively reasonable well-founded fear of future persecution should they return to Fujian Province.

### III.

We will grant the petition, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.