

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2008

# Wu v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4946

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Wu v. Atty Gen USA" (2008). *2008 Decisions*. Paper 729.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/729

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4946

———————

MEI XIU WU,
                                             Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES

———————————————

On a Petition For Review of an Order
of the Board of Immigration Appeals
Agency No. A95-846-183
Immigration Judge: Rosalind K. Malloy

———————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2008

Before: BARRY, SMITH and HARDIMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed August 4, 2008)
———————

OPINION
———————

PER CURIAM

Petitioner Mei Xiu Wu, a married native and citizen of the People's Republic of

China, was admitted into the United States on or about December 26, 1996. Wu married

in New York City on November 18, 1999. On or about August 23, 2002, after the birth of

her second United States citizen child, she applied for asylum under Immigration and

Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming that she fears persecution in the future in the People's Republic of China if she returns because of her opposition to the Chinese government's coercive birth control policies. Wu's asylum application was referred to an Immigration Judge, and, on November 15, 2002, she was served with a Notice to Appear, alleging that she was removable under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), as an alien who at the time of entry was inadmissible for lack of a valid entry document. Wu conceded that she was removable as charged.

In her asylum application, Wu explained that she had no need for asylum until after her second child was born on September 11, 2001 in Philadelphia, where she and her family reside. Unlike before, she now is in violation of China's birth control policies, having had a daughter after the birth of a son. In a statement attached to her asylum application, Wu stated that the family planning authorities in Fujian province will force her to get sterilized, and she will be fined. Her children will not be permitted to register and she will have to pay their school tuition with U.S. dollars. Wu also claimed that, if she gets pregnant again, she will be forced to undergo an abortion. Finally, she contended that, because she left the country illegally, she will be sentenced to jail for 6 months to 2 years.

At her removal hearing on May 26, 2005 in Philadelphia Immigration Court, Wu testified that her mother and aunt suffered persecution at the hands of the family planning

2

authorities in Fujian province, and she was sent to the United States at the age of eighteen so that she would not have a similar experience. If she returns to China, she will bring her children with her. Her husband owns a restaurant in Philadelphia and is employed there, but he could not care for the children himself, and he too is under an order of removal in any event.

The Immigration Judge denied Wu's application. She concluded that the asylum application was untimely and that no exceptions applied for the late filing. With respect to the application for withholding of removal under the INA, the IJ noted the absence of any evidentiary support for Wu's assertion that an individual who gave birth to two children in the United States would be persecuted upon her return to China. The IJ reviewed the only probative documentary evidence offered, the State Department's analysis of family planning enforcement in Fujian province in its 2004 Profile of Asylum Claims and Country Conditions, and she noted that the provincial government indeed vigorously defends its population policies. However, this 2004 Asylum Report showed no clear evidence of forced sterilizations or abortions in the preceding 10 years. Local physicians in contact with the U.S. Consulate General in Guangzhou reported that they had not seen signs of forced abortions or sterilizations among their patients from Fujian province. Consulate General officials visiting Fujian found that coercion through public pressure has been used, but they found no evidence of forced abortion or property confiscation. United States diplomats in China were not aware of any cases in which returnees from the United States were forced to undergo sterilization upon their return.

On the other hand, economic sanctions are likely. Couples with unauthorized children cannot hold government jobs, and families with unauthorized children must pay "social compensation fees" upon their return from abroad. American children traveling on American passports are not eligible for free public education. The IJ concluded, nevertheless, that these economic sanctions do not rise to the level of persecution. In addition, the Chinese government could legitimately punish Wu if she violated any laws in leaving illegally. In any event, there was no evidence that she would be jailed upon her return. The IJ further concluded that Wu failed to establish that she would be tortured for any reason upon her return to China. Wu's application for voluntary departure was granted, but an order of removal to the People's Republic of China would take effect should she fail to depart within the required time.

Wu appealed to the Board of Immigration Appeals, contending, in pertinent part, that Section D of the 2004 Profile of Asylum Claims and Country Conditions specifically states that, in Fujian province, a family in which both parents are Chinese citizens would be expected to conform to the restrictions in Chinese law on future offspring. This statement could be construed to mean that Wu would be subjected to involuntary sterilization or forced abortion should she become pregnant again. Also, her U.S. citizen children would be deprived of a proper education. Wu urged the Board to consider that she had demonstrated her "other resistance" to the Chinese government's birth control policies within the meaning of the expanded definition of "refugee" in INA § 101(a)(42).

In a decision dated October 31, 2006, the Board agreed with the IJ that Wu failed

4

to establish extraordinary circumstances for her failure to file an asylum application within one year of her arrival, see generally Matter of Y-C-, 23 I. & N. Dec. 286 (BIA 2002). The Board further noted that it did not consider the fact of having had two children in the United States sufficient to constitute "other resistance" to China's birth control policies in and of itself, and found Wu's evidence insufficient to show that, as a returning emigrant, she will be involuntarily sterilized or subjected to forced abortions of any future pregnancies. Therefore, she had failed to prove a clear probability of persecution. The Board further agreed with the IJ that prosecution for illegally departing a country generally is not persecution.[1] Because Wu could not meet the lower burden of proof required for asylum, she necessarily did not qualify for withholding of removal. She also did not establish that she was entitled to relief under the Torture Convention, 8 C.F.R. § 1208.18(a). Wu timely petitions for review.

We have jurisdiction generally to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1), and, here, to the extent that the Board deferred to the IJ's reasoning in part, we review the Board's decision but consider the IJ's as well as a matter of logic. See Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d Cir. 2003). The determination that Wu delayed too long in applying for asylum, and that she did not show changed circumstances which materially affected her eligibility for asylum or extraordinary

---

[1] Wu did not brief this issue on appeal, and, accordingly, we deem it waived. See Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 n.11 (3d Cir. 2007).

circumstances relating to the delay in filing the application,[2] is unreviewable. 8 U.S.C. § 1158(a)(3); <u>Sukwanputra v. Gonzales</u>, 434 F.3d 627, 634 (3d Cir. 2006). The existence of these exceptions is a discretionary determination we are unable to review. <u>See</u> <u>Chen v. U.S. Attorney Gen.</u>, 491 F.3d 100, 105 (3d Cir. 2007).

The standard for withholding of removal under INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A), is: "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group or political opinion." To qualify as a "refugee" under INA § 101 (a)(42), Wu had to establish that she was persecuted for failing or refusing to undergo involuntary sterilization or for "other resistance" to China's population control policy, or alternatively, that she has a well-founded fear of being persecuted for her resistance to the population control policy were she to be sent back to China. 8 U.S.C. § 1101(a)(42); <u>Li v. U.S. Attorney. Gen.</u>, 400 F.3d 157, 163 (3d Cir. 2007). If so, she is deemed to have been persecuted on account of a political opinion. <u>Id.</u>

The withholding of removal standard is more exacting than the asylum standard and requires the alien to show by a "clear probability" that her life or freedom would be threatened on account of a protected ground in the proposed country of removal.

---

[2] If the alien can establish "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing the application," failure to file the application within the one year period may be excused. 8 U.S.C. § 1158(a)(2)(D).

Immigration & Naturalization Serv. v. Stevic, 467 U.S. 407 (1984). See also

Immigration & Naturalization Serv. v. Cardoza-Fonseca, 480 U.S. 421, 430 (1987)

("would be threatened" standard has no subjective component). The Board's findings of

fact in this regard "are conclusive unless any reasonable adjudicator would be compelled

to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also Immigration &

Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under this deferential

standard, the petitioner must establish that the evidence does not just support a contrary

conclusion but compels it. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

In order to prove the objective reasonableness of her claimed fear of involuntary

sterilization, Wu relied exclusively on her testimony and the 2004 Profile of Asylum

Claims and Country Conditions (Asylum Report). That report, however, on the page

referenced by Wu, page 26, was correctly summarized by the IJ. It states that United

States diplomats in China are not aware of any cases in which returnees from the United

States were forced to undergo sterilization upon their return. Visa applicants from Fujian

province stated that they had paid fines for violating the one-child policy, but none gave

evidence of forced abortion. The Profile also reports that the central government's policy

prohibits the use of physical coercion to compel persons to submit to abortion or

sterilization and that, while there are reports that physical coercion occurs in some rural

areas, the frequency of such cases is declining. This evidence would not have compelled

any reasonable person to find a clear probability that Wu would be persecuted upon

returning to China. 8 U.S.C. § 1252(b)(4)(B). See generally Yu v. U.S. Attorney Gen.,

7

513 F.3d 346, 348 (3d Cir. 2008) (substantial evidence, including 2004 State Department Country Report, supported finding that fear of involuntary sterilization based on applicant's having had second child while outside China was not reasonable); In re: C-C-, 23 I. & N. Dec. 899 (BIA 2006) (same). At most, the 2004 Profile contains the general statement that returning Chinese citizens would be expected to conform to the restrictions in Chinese law on future offspring, but this statement alone does not prove the objective reasonableness of Wu's claimed fear of involuntary sterilization or forced abortions.[3] In addition, the likely economic sanctions do not rise to the level of "severe economic disadvantage which threatens a petitioner's life or freedom," Li v. U.S. Attorney General, 400 F.3d 157, 168 (3d Cir. 2005).

Finally, the Board concluded that Wu did not meet her burden of establishing that it is more likely than not that she will be tortured in China, 8 C.F.R. § 1208.18. The record does not compel a different conclusion.

For the foregoing reasons, we will deny the petition for review.

---

[3] We note that Wu retains an opportunity to move to reopen proceedings before the Board should she obtain new evidence that "is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). The time and numerical limitations do not bar a motion to reopen if it is "based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered." Id. § 1003.2(c)(3).