**XIU ZHEN WENG; Juan Yue Chen, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 08–4701.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Feb. 23, 2010.

Filed: Feb. 24, 2010.

Richard Tarzia, Esq., Belle Mead, NJ, for Petitioners.

Thomas W. Hussey, Esq., John J.W. Inkeles, Esq., Gary J. Newkirk, Esq., United States Department of Justice Office of Immigration Litigation, Washington, DC, Michael B. Mukasey, Esq., Debevoise & Plimpton, New York, NY, for Respondent.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION

PER CURIAM.

Petitioners seek review of the Board of Immigration Appeals' ("BIA") final order of removal. For the reasons that follow, we will deny their petition for review.

### I.

The petitioners, wife and husband, are Chinese citizens. They married after arriving in the United States and later had two United States citizen children. Both petitioners concede removability, but they seek asylum, statutory withholding of removal, and relief under the Convention Against Torture ("CAT") on the grounds that the birth of their second child will subject them to China's coercive family-planning policies if returned. In particular, they fear that authorities will require one of them to be sterilized or impose a "social compensation fee" that they fear will rise to the level of persecution.

Only the wife testified before the Immigration Judge ("IJ"). She testified that Chinese law requires the sterilization of one member of any couple that has a second child and that she learned of this policy through television broadcasts and fliers. She also testified that she knows of

at least three people who have been sterilized, but does not know of anyone who has been sterilized after returning to China with a second child born abroad. Petitioners also submitted documentary evidence, including a 2006 Congressional report, numerous news articles, and an affidavit from the wife's sister. (A.R. 2570–2905.)

The IJ denied petitioners' claims by written decision and order issued April 4, 2007. The IJ concluded that petitioners had a subjectively genuine fear of future persecution but not an objectively reasonable one. In particular, the IJ concluded that petitioners had shown neither that they would be singled out for sterilization nor that China has a pattern or practice of sterilizing a member of a couple that returns with two foreign-born children.

Petitioners appealed to the BIA. In addition to seeking review of the IJ's ruling, they submitted some 2100 pages of additional documents and requested in the alternative that the BIA remand for the IJ to address their additional evidence.[1] By order issued November 10, 2008, the BIA dismissed petitioners' appeal. The IJ had not specifically discussed petitioners' claim regarding the "social compensation fee," but the BIA rejected it. The BIA also

denied their request for a remand. Petitioners seek review.[2]

## II.

■ Our review of the record confirms that the denial of petitioners' claim for asylum is supported by substantial evidence. The IJ noted that petitioners had not established that their United States born children would "count" for purposes of China's family planning policy. She also concluded that petitioners' evidence showed only "isolated incidents" of forced sterilization and that the Chinese government relies primarily on "social compensation fees" to enforce its family planning laws. (IJ Dec. at 11) (citing Congressional report at A.R. 2585). Thus, she concluded that petitioners' fear of sterilization was not objectively reasonable. The BIA added to this conclusion by relying on the 2005 Country Report and citing its prior decisions in *In re S–Y–G–*, 24 I. & N. Dec. 247 (BIA 2007), *In re J–H–S–*, 24 I. & N. Dec. 196 (BIA 2007), *In re J–W–S–*, 24 I. & N. Dec. 185 (BIA 2007), and *In re C–C–*, 23 I. & N. Dec. 899 (BIA 2006), in which it previously considered almost all of the evidence that petitioners submitted in this case.[3] We cannot say that the record compels a contrary conclusion.

1. Petitioners submitted two duplicative sets of documents, one in support of the brief for each petitioner. (A.R. 28–1240, 1264–2466.) The only difference between the two sets is that the former contains exhibit tabs that the latter does not. Each set also includes all of the approximately 330 pages of documents that petitioners already had submitted to the IJ.

2. We have jurisdiction under 8 U.S.C. § 1252(a)(1). We review the decisions of both the IJ and the BIA because the BIA both agreed with the IJ's conclusions and provided its own analysis. *See Hashmi v. Att'y Gen.*, 531 F.3d 256, 259 (3d Cir.2008). We review the Agency's factual findings for substantial evidence and must treat them as " 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.' "

*Wong v. Att'y Gen.*, 539 F.3d 225, 230 (3d Cir.2008) (citations omitted). We review BIA's denial of petitioners' motion for remand for abuse of discretion. *See Vakker v. Att'y Gen.*, 519 F.3d 143, 146 (3d Cir.2008). Petitioners have not challenged the BIA's denial of their claims for withholding of removal or relief under CAT on review, so we do not consider them. *See Wong*, 539 F.3d at 237.

3. The BIA previously concluded, on the basis of much of the evidence at issue here, that other applicants failed to establish that United States born children "count" for Chinese family planning purposes or that the Chinese government has a policy of forcibly sterilizing those who return to China with a second child born abroad. *See In re S–Y–G–*, 24 I. & N. Dec. at 255; *In re J–W–S–*, 24 I. & N. Dec. at 190–91.

Petitioners challenge the BIA's conclusion that their fear of sterilization is not objectively reasonable primarily on two grounds. First, they claim that the IJ and BIA erred in not finding that their United States born children would "count" for Chinese family planning purposes. They argue that the IJ and BIA "ignored" prior BIA precedent holding that children born in the United States are treated no differently than children born in China. Inexplicably, however, the only authority they cite is *In re J–W–S–*, which, as explained above, holds just the opposite. *See* 24 I. & N. Dec. at 190–91. They also argue that one of their documents—a document issued by the United States Department of State entitled "Tips for Travelers to the People's Republic of China"—compels the conclusion that their children will "count" for family planning purposes despite having been born in the United States. The document states that children born in the United States to Chinese citizens "are not recognized as U.S. citizens under Chinese nationality law." (A.R. 3065.) The IJ, however, explained that it does not address China's family planning policy, and we agree with her assessment. (IJ Dec. at 11.)

Second, petitioners challenge the BIA's conclusion that they failed to establish a reasonable likelihood of forcible sterilization on return. They argue that the IJ did not give adequate weight to certain pieces of their evidence, in particular: (1) an affidavit from the female petitioner's sister

stating that family planning officials told her that a Chinese citizen returning with two children born abroad would have to be sterilized; (2) a 2005 report by the United Nations High Commission for Refugees; (3) New York Times articles regarding the prosecution of an anti-family planning advocate; and (4) various CNN.com and AsiaNews articles.[4] The IJ expressly discussed many of these exhibits, however, and we cannot say that they compelled a ruling in petitioners' favor. (IJ Dec. at 11.) The IJ also addressed the affidavit from the wife's sister, but declined to give it "significant weight" because its author was a "sympathetic family member" and its contents were not corroborated by other objective evidence. (*Id.*) Petitioners assert that the IJ acted "improperly" in doing so, but cite no authority. We do not believe that the IJ was required to credit the affidavit. In sum, petitioners have not shown that the BIA erred in concluding that their fear of sterilization is not objectively reasonable.

Petitioners also challenge the BIA's conclusion that they failed to prove that they face persecution in the form of a "social compensation fee." Imposition of a "severe economic disadvantage which threatens a petitioner's life or freedom may constitute persecution." *Li v. Att'y Gen.*, 400 F.3d 157, 168 (3d Cir.2005). The BIA rejected petitioners's argument that they have a well-founded fear that any fee would do so here because petitioners "pro-

4. Petitioners phrase their argument as one that the IJ "ignored" or "failed to acknowledge" certain pieces of this evidence. With the exception of the United Nations report, however, the IJ expressly discussed this evidence, and we thus understand petitioners to argue that the IJ and BIA gave it inadequate weight. To the extent that petitioners argue that the IJ overlooked this evidence, we agree with the Government that they failed to exhaust that argument by raising it before the BIA. (A.R. 9–27.) *See Wu v. Att'y Gen.*, 571

F.3d 314, 317 (3d Cir.2009). We note, however, that the United Nations report does nothing for petitioners' claims: it merely discusses asylum claims based on population control policies in general and does not even mention China. (A.R. 2595–2606.) We further note that, despite petitioners' assertion that the IJ and BIA did not adequately consider the record in general, the Agency decisions provide adequate indicia that they did. *See Abdulai v. Ashcroft*, 239 F.3d 542, 549–50 (3d Cir.2001).

vided no information regarding their financial status." (BIA Dec. at 2.)

Petitioners do not claim otherwise, but they cite evidence in the record for the proposition that the fee sometimes exceeds by many factors an individual's annual income. One of the reports they cite, however, states that "[t]here is wide variation in the amount of social compensation fees" and that any given fee is determined, in part, on the basis of a person's actual income. (A.R. 869.) We also have explained that whether economic deprivation rises to the level of persecution depends, in part, on the petitioner's own circumstances. *See Li*, 400 F.3d at 168 & n. 8. Thus, we cannot say that the record compelled the BIA to find that petitioners face persecution in this regard.

■ Finally, petitioners argue that the BIA abused its discretion in denying their motion to remand. There is no express statutory authorization for motions to remand, but petitioners' request was in the nature of a motion to reopen and the BIA treated it as such. *See In re Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992). The BIA denied petitioners' motion because they failed to satisfy the standard for reopening (they had not demonstrated that their new evidence was material or previously unavailable or undiscoverable, *see* 8 C.F.R. § 1003.2(c)(1)), and because their evidence did not establish *prima facie* eligibility for asylum. Each was a permissible basis to deny the motion. *See Zheng v. Att'y Gen.*, 549 F.3d 260, 265–66 (3d Cir.2008).

As the BIA noted, the vast majority of petitioners' evidence already had been submitted to the IJ or pre-dated their hearing, and petitioners do not claim that they could not have discovered it previously. Petitioners do not directly challenge that

conclusion. Instead, they argue that the BIA's consideration of this issue constituted improper fact finding on review. They cite no authority for that argument, however, and it is directly contradicted by the applicable regulation, which requires precisely that inquiry. *See* 8 C.F.R. § 1003.2(c)(1).

Petitioners also argue that remand is required because the BIA did not adequately consider their evidence. *See Zheng*, 549 F.3d at 271. We disagree. "Consideration of all evidence does not require comment on all evidence." *Thu v. Att'y Gen.*, 510 F.3d 405, 416 n. 16 (3d Cir.2007); *cf. Zheng*, 549 F.3d at 271 (BIA's decision inadequate where if "fail[ed] to offer even a cursory review of the record"). In this case, the BIA expressly addressed much of petitioners' purportedly new evidence, and it relied on the previous decisions cited above in which it already had considered still more of that evidence. *Cf. Zheng*, 549 F.3d at 270 n. 7 (reference to earlier decisions insufficient where different evidence was at issue). Its decision was thus not the kind of conclusory decision we condemned in *Zheng*. On the contrary, it more closely resembles the decision that we later found sufficient in *Liu v. Attorney General*, 555 F.3d 145, 149–50 (3d Cir.2009).

The only new evidence cited by petitioners that the BIA did not address expressly and that does not appear to have been at issue in its prior decisions is an April 17, 2007 report by a Department of Homeland investigator stating the result of her investigation into the authenticity of certain documents.[5] Petitioners rely on this report's statement that Chinese parents will be "sanctioned" if they "conducted any birth acts in violation of the family plan-

---

5. The copies of this report that petitioners submitted appear to be incomplete. (A.R. 30–

39, 1264–73.)

ning regulations" while outside China. (A.R. 39, 1273.) The report, however, does not suggest that the Chinese government has a policy of forcibly sterilizing such parents, or anyone else. To the contrary, it states elsewhere that "no forced IUD insertions and sterilization operations exist." (*Id.* at 38, 1272.) Moreover, the report merely summarizes information received from the Chinese government—in this instance, an October 13, 2006 report that itself pre-dates petitioners' hearing. Thus, the BIA did not abuse its discretion in not mentioning this document or otherwise abuse its discretion in denying petitioners' motion to remand.

Accordingly, we will deny the petition for review.