[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15923
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 8, 2010
JOHN LEY
CLERK

Agency No. A099-934-503

YAN FANG CHEN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 8, 2010)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner Yan Fang Chen ("Chen") is a native and citizen of China and

mother of two children.  She petitions this Court for review of a final order issued by the Board of Immigration Appeals ("BIA") denying her application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and denying relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").  Chen argues that she has a well-founded fear of being forcibly sterilized, fined, or both, under China's "one child" policy because she has two children born in the United States.  After thorough review, we conclude that the BIA's decision is supported by substantial record evidence.  Therefore, we deny the petition.

## I.

Chen illegally entered the United States from China in 1999.  Once here, she married Mi Tu Lin, who is also a Chinese citizen residing in the Untied States illegally, and they had a child together.  After becoming pregnant with their second child, she filed an application for asylum under the INA and for withholding of removal under the INA and CAT in March, 2007.  In May, 2007, the Department of Homeland Security served Chen with a Notice to Appear charging her with being subject to removal under the INA.  Chen conceded that she was removable and indicated that she would seek political asylum.

In November 2008, Chen appeared before an Immigration Judge ("IJ") and presented evidence on the merits of her asylum claim.  Chen testified that if she

2

were returned to China, she would reside in Changle City, Fujian Province where her husband's family resides. She stated that she would be subject to sterilization under the applicable family planning laws if she were returned, because the current family planning policy in that area requires sterilization after the birth of a second child. Chen testified that her father and father-in-law had both questioned village officials, who confirmed that she would subject to the family planning laws and provided notices stating that either she or her husband would be sterilized if she returned.

Chen also testified that she knows people in her village who have been sterilized under the family planning laws, including her mother, brother-in-law, uncle, cousin's wife, and schoolmate's wife. She also testified that although their projected income will be between 8,000 and 9,000 yuan, they will be required to pay a fine ranging from 30,000 to 50,000 yuan for violating the family planning laws. And finally, Chen testified that although her children are United States citizens, they would be treated as Chinese citizens, and must be registered as Chinese residents in the "Household Registration Book." She stated that if she does not register them, they will be unable to qualify for state benefits such as public education and healthcare, and that she could face criminal charges.

In addition, Chen submitted a substantial amount of documentary evidence in support of her asylum claim. This included letters from her husband, father,

3

father-in-law, and a family friend confirming the sterilization policy, as well as notices from local family planning offices and a 2003 administrative decision indicating that she would be subject to the policy if returned. She also submitted a large number of official government reports concerning family planning laws in China, including, among other documents, a 2007 United States Department of State ("State Department") report entitled China: Profile of Asylum Claims and Country Conditions ("Asylum Profile"); a congressional report; congressional testimony from demographer John Shields Aird; her family members' travel and citizenship documents; and various news reports and other documents regarding cases of other individuals subjected to sterilization.

After hearing Chen's testimony and reviewing the documentary evidence she submitted, the IJ denied her application. Noting that the general documentary evidence she submitted is essentially identical to evidence the BIA had previously concluded was insufficient, the IJ found that isolated reports of sterilizations did not indicate that Chen, whose children were United States citizens, would be singled out for forced sterilization. Rather, he found family planning enforcement in Fujian Province was "lax or uneven." He found that Chen would more likely be subject to economic fines and penalties, but that Chen had not established that these would rise to the level of persecution. He also explained that the State Department's 2007 Asylum Profile had not found a single case of forced

4

sterilization in Fujian Province, and noted that many violators of the family planning laws faced only fines. The IJ declined to rely on the notices from local family planning officials, observing that the State Department has advised that many documents from Fujian Province are fraudulent. And he discounted the record evidence of others who claimed to have been sterilized, noting that such anecdotal incidents did not establish that Chen would be singled out and subjected to persecution. Thus, the IJ found that Chen had failed to demonstrate an objectively well-founded fear of persecution and denied her application.

On appeal the BIA affirmed. Regarding the background information, the BIA, like the IJ, considered State Department documents; the Fujian Province family planning regulations; publications of Chinese government agencies; congressional testimony; Aird's conclusions; and articles from various news publications. It found this evidence "general in nature and cumulative of documentation analyzed" and rejected prior BIA cases, citing its previous published decisions.

The BIA also discounted the individualized evidence Chen submitted. It found her claims that her mother, brother-in-law, uncle, cousin's wife, and schoolmate's wife were forcibly sterilized were insufficient because, unlike Chen, they did not have children born abroad who were United States citizens. In addition, the BIA noted that the record omits relevant facts regarding the

5

circumstances of these procedures, and thus, it was not clear from the record that these sterilizations amounted to persecution. Similarly, the BIA discounted affidavits submitted by a man returning to China with two children born in Japan and a woman returning with a second child born in Romania who were allegedly sterilized. In this regard, the BIA found that Chen had not established that they were similarly situated because their children were not United States citizens and the impact of those countries' nationality laws was unclear. Finally, it significantly discounted the statements from Chen's father and father-in-law, along with the purported notices from Fujian Province officials stating that Chen would be subjected to sterilization. It noted that the documents were not originals, were unauthenticated, and were unsupported by independent evidence. It also found the notices to be "suspect" because the implication that Chen must accept forced sterilization was contradicted by the country conditions evidence in the record, such as the 2007 Asylum Profile.

Finally, the BIA considered the evidence that Chen would be subjected to harsh fines under Fujian Province family planning laws and rejected Chen's contention that imposition of these fines would amount to persecution. In this regard, the BIA found no clear error in the IJ's finding that the amount of any fine Chen might face was speculative.

Based on this, the BIA determined that Chen had not demonstrated either

6

that she violated the family planning policy of Fujian Province or that such a violation would be punished in a way that would give rise to a well-founded fear of future persecution. Regarding the possibility of sterilization, the BIA determined that the evidence did not demonstrate that forcible sterilizations are mandated in Fujian Province after the birth of a second child who is a United States citizen. It found that forced sterilization, to the extent it occurs, is uncommon and unauthorized by Chinese law, which relies primarily on incentives and economic penalties to achieve compliance with family planning laws. It further found that sporadic reports of forced sterilizations were insufficient to establish a well-founded fear that Chen would be singled out for forced sterilization, and that she had established, at most, a 10% likelihood of persecution upon her return to China. Finally, the BIA determined that even if Chen were fined for noncompliance with the Chinese family planning laws, the record does not establish that she would suffer economic harm amounting to persecution. As a result, the BIA dismissed Chen's appeal.

Chen now seeks review of that determination.

## II.

When the BIA issues a separate opinion affirming the decision of the IJ, we review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. Huang v. U.S. Att'y Gen., 429 F.3d 1002, 1008 (11th Cir. 2005). To the

7

extent the BIA's decision is based on a legal determination, we review the decision

*de novo*. Diallo v. U.S. Att'y Gen., 596 F.3d 1329, 1332 (11th Cir. 2010). The

BIA's "[f]actual determinations are reviewed under the substantial evidence test,

and we 'must affirm the BIA's decision if it is supported by reasonable,

substantial, and probative evidence on the record considered as a whole.'" Id.

(quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). "Under

the substantial evidence test, we review the record evidence in the light most

favorable to the agency's decision and draw all reasonable inferences in favor of

that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en

banc). "Thus, 'a finding of fact will be reversed only when the record compels a

reversal; the mere fact that the record may support a contrary conclusion is not

enough to justify a reversal of the administrative findings.'" Diallo, 596 F.3d at

1332 (quoting Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006)).

## A.

Under the INA, an alien who arrives in, or is present in, the United States

may apply for asylum. 8 U.S.C. § 1158(a)(1). The Attorney General of the United

States or the Secretary of the Department of Homeland Security has discretion to

grant asylum if the alien is a "refugee." Id. at § 1158(b)(1). The INA defines a

"refugee" as:

> [A]ny person who is outside any country of such person's nationality

. . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

Id. § 1101(a)(42)(A). Relevant to this petition, the INA expressly recognizes forced sterilization as persecution on account of political opinion:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Id.; Zhang v. U.S. Att'y Gen., 572 F.3d 1316, 1319–20 (11th Cir. 2009).

"The asylum applicant carries the burden of proving statutory 'refugee' status and thereby establishing asylum eligibility." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230 (11th Cir. 2005). To meet this burden, an asylum applicant must establish with specific credible evidence either (1) past persecution on account of political opinion or any other statutorily protected ground, or (2) a "well founded fear" of such persecution in the future. Id. at 1230–31; 8 C.F.R. § 208.13(a)–(b). Where an alien has established past persecution based on a statutorily protected ground, the alien is entitled to a rebuttable presumption that he or she will face persecution upon return to his or her country of origin. 8 C.F.R. §

9

208.13(b)(1); Sepulveda, 401 F.3d at 1231.  Absent past persecution, however, the alien is required to demonstrate a fear of future persecution that is both "subjectively genuine and objectively reasonable." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1007 (11th Cir. 2008); Al Najjar, 257 F.3d at 1289.  The subjective component can be satisfied "by the applicant's credible testimony that he or she genuinely fears persecution," De Santamaria, 525 F.3d at 1007, while "the objective prong can be fulfilled by establishing that the applicant 'has a good reason to fear future persecution,'" id. (quoting Ruiz, 440 F.3d at 1257)).

With respect to China's population control policies, the BIA has adopted a case-by-case analytical framework in evaluating whether an alien has demonstrated an objectively reasonable fear of future persecution.  Under this inquiry, the BIA asks whether the alien has (1) provided details of the family planning policy as applied in the alien's home province; (2) established that the alien actually violated the applicable family planning policy; and (3) demonstrated that the violation of the family planning policy would be punished in a way that would rise to the level of persecution.  See Shao v. Mukasey, 546 F.3d 138, 142–43 (2d Cir. 2008) (discussing BIA inquiry).[1]

Applying this framework, the BIA determined that Chen had failed to

---

[1] Chen has not challenged the BIA's application of this evidentiary framework in her case.

10

establish an objectively reasonable fear of future persecution. Because Chen never claimed that she suffered past persecution, the BIA found that she was not entitled to a rebuttable presumption of future persecution. It further found that Chen had not established an objectively reasonable fear of future persecution, finding both the general background information concerning China's population control laws and the individualized evidence Chen submitted insufficient.

Chen argues the BIA's decision should be reversed because the BIA ignored relevant evidence and failed to adequately explain its decision. We disagree. First, to the extent Chen claims that the BIA ignored relevant evidence, she does not identify which evidence she believes the BIA failed to consider in reaching its decision. Such general claims of error are neither helpful nor sufficient to establish that the BIA's factual determinations in this case are not supported by the record. But in any event, the BIA adequately explained its decision. The BIA addressed the general background documents Chen submitted, stating that it had routinely found this same evidence insufficient in other cases. The BIA is not required to discuss every piece of evidence, so long as it gives reasoned consideration to the evidence submitted. See Morales v. INS, 208 F.3d 323, 328 (11th Cir. 2000) ("'Where, as here, the Board has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the

11

petitioner presented.'" (quoting Martinez v. INS, 970 F.2d 973, 976 (1st Cir. 1992)). The BIA's reliance on its consistent rejection of this general evidence in other cases is adequate, particularly given that Chen has not pointed to any basis for distinguishing her case from the cases the BIA cited. The BIA also addressed Chen's individualized evidence, and found it insufficient because it either related to individuals who were not similarly situated to Chen or was entitled to little weight. As Chen makes no argument concerning the BIA's decision to substantially discount this evidence, we cannot say that the BIA's determination was not supported by substantial evidence or that the record compels a contrary finding.

Second, Chen's reliance on our decisions in Jiang v. U.S. Attorney General, 568 F.3d 1252 (11th Cir. 2009) and Li v. U.S. Attorney General, 488 F.3d 1371 (2007), is misplaced. Those cases dealt with whether the BIA abused its discretion in refusing to reopen a previously denied petition for asylum. See Jiang, 568 F.3d at 1256–57; Li, 488 F.3d at 1374–76. Those decisions therefore only address whether the aliens provided sufficient evidence of changed circumstances to warrant reopening a previously denied petition for asylum. They do not address whether that evidence would be sufficient to establish an objectively reasonable fear of persecution in the first instance, which is the showing Chen must make in this case.

12

Moreover, our own review of the evidence Chen submitted persuades us that the BIA's decision is supported by substantial evidence. To be sure, Chen has submitted a significant amount of information indicating that she may be subjected to sterilization if returned to China[2] and we have no doubt that Chen has a subjective fear that she will suffer that fate. But under our deferential standard of review, we cannot say that the record compels a conclusion that Chen has established an objectively reasonable fear of persecution. The background information Chen submitted certainly indicates that forced sterilizations have occurred. However, the BIA explained that it has analyzed this same information in other published decisions and found it inadequate to demonstrate a well-founded fear that the aliens in each of those cases would be singled out for forcible sterilization upon returning to China having had more than one child. See In re C-C-, 23 I&N Dec. 899 (BIA 2006); In re J-W-S-, 24 I&N Dec. 185 (BIA 2007); In re J-H-S-, 24 I&N Dec. 196 (BIA 2007); In re S-Y-G-, 24 I&N Dec. 247 (BIA 2007). Yet, as explained above, Chen makes no effort here to distinguish her claim

---

[2] We note that although Chen's counsel has generally pointed to evidence submitted in the statement of facts, counsel's brief does not identify evidence or offer meaningful argument concerning the BIA's conclusions that (1) the documents submitted by family members did not establish an objectively reasonable fear of persecution because those individuals were not similarly situated to Chen; (2) that documents from individuals returning to China were insufficient because those individuals did not have children who were U.S. citizens and were returning from countries with different nationality laws; and (3) that the statements from her family members and the purported notices from village family planning officials were entitled little weight. Nevertheless, given the evidence submitted and the important interests at stake, we endeavor to address these issues in any event.

from the asylum claims rejected by the BIA in those cases, which supports the BIA's decision. Furthermore, many of these background documents relate to periods before 2002, when China's family planning regulations were apparently amended to provide for guidance on long-term and effective birth control measures as an alternative to the simple rule of "IUD for one birth, sterilization for two births." Although the record contains contradictory information about the intent and implementation of these amendments, there is substantial evidence in the record to support the BIA's decision.[3]

Nor does the other information Chen submitted conclusively demonstrate that the birth of a second child in the United States would trigger enforcement of family planning regulations in Fujian Province amounting to persecution. For example, the 2007 Asylum Profile, on which Chen relies, states that according to the family planning officials in Fujian Province, there have been no cases of forced abortion or sterilization there in the last 10 years. Asylum Profile at 26. It is true that such claims are impossible to verify and asylum applicants claim that forced sterilization procedures continue. However, the report states that State Department officials have been unable to find any cases of forced sterilization and local doctors

---

[3] In other cases, the BIA has refused to credit Aird's testimony over the State Department's assessment of family planning laws and practices, finding that his testimony was not based on personal knowledge of conditions in China. See In re J-W-S-, 24 I&N Dec. at 189–90; In re C-C-, 23 I&N Dec. at 901.

in contact with United States consular officials report that they have not seen any signs of forced sterilizations or abortions in their patients in Fujian Province since the 1980s.

More significantly, the record contains contradictory information as to whether Chen's children, who are United States citizens, would be counted for birth planning purposes upon her return to China. Chen has submitted evidence, including statements from relatives; a 2003 administrative decision from Fujian Province; and purported notices from family planning officials; all of which state that her children would be counted. However, the record also contains evidence that they would not be counted, at least so long as they are not registered as mainland Chinese residents upon their return.[4] This includes the 2007 Asylum Profile and a United States Customs and Immigration Service investigation relating to the 2003 administrative decision. Given this evidence, we cannot say that the BIA's decision was unsupported by the record.

Finally, we cannot say, on the record before us, that the evidence in the record compels the conclusion that any fine Chen might be subjected to would rise to the level of persecution. Chen testified that she would be fined between 30,00

---

[4] While the record indicates that the failure to register might preclude her children from attending state-funded public schools, it also indicates that private schools are available. Lacking specific evidence as to the nature of the educational opportunities, their availability, and costs, we cannot evaluate what difference, if any, this would make.

and 50,000 yuan, an amount that would be approximately three to five times her projected annual income. Her testimony was corroborated by her family members' statements and the notices purportedly issued by family planning officials. However, the fine schedule Chen provided indicates that the fine might be as low as 13,510 yuan. While this amount would no doubt constitute a formidable sum for someone making 8,000 to 9,000 yuan per year, it contradicts her testimony and the documentary evidence she provided. The BIA considered this evidence, as well as evidence indicating Chen's United States citizen children would not be counted, and the <u>Asylum Profile</u>'s conclusion that fines vary widely across China, both in amount the severity of the hardship they impose. In light of these findings, and the BIA's decision to afford little weight to the statements from family members and unauthenticated documentary evidence received from family planning officials, the BIA's determination is adequately supported by the record.

We are aware that the BIA has determined that "[e]forcement efforts resulting in moderate economic impact would not, in general, prove a well-founded fear of future persecution." <u>See</u> <u>In re J-W-S-</u>, 24 I&N Dec. at 191.[5] As stated

---

[5] This is consistent with the view of other circuits that have considered the question. <u>See</u> <u>Guan Shan Liao v. U. S. Dep't of Justice</u>, 293 F.3d 61, 70 (2nd Cir. 2002) ("While we recognize that economic deprivation may constitute persecution, an asylum applicant must offer some proof that he suffered a 'deliberate imposition of substantial economic disadvantage.'" (quoting <u>Chen v. INS</u>, 195 F.3d 198, 204 (4th Cir. 1999))); <u>Abdel-Masieh v. INS</u>, 73 F.3d 579, 583 (5th Cir. 1996) (concluding that "deliberate imposition of severe economic disadvantage or the deprivation liberty, food, housing, employment or other essentials of life" may amount to persecution (quotation omitted)).

16

above, the fine schedule provided by Chen shows a possible fine as low as 13,510 yuan. Additionally, the State Department's 2007 Asylum Profile states that individuals who cannot afford to pay the family planning fines may be allowed to pay in installments and that their wages cannot be garnished. Thus, we cannot say that the record compels the conclusion that Chen would be subjected to a fine rising to the level of persecution.

In sum, we sympathize with Chen and do not doubt her subjective fear of forced sterilization upon return. But the record before us does not compel the conclusion that she has an objectively reasonable fear of persecution upon her return. That being the case, we must deny her petition for review.

B.

To the extent Chen challenges the BIA's denial of her application for withholding of removal under the INA and the CAT, that challenge likewise fails. An alien is entitled to withholding of removal under the INA if she can show her life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). The alien bears the burden of demonstrating it is "more likely than not" she will be persecuted or tortured upon being returned to her country. Fahim v. U.S. Att'y Gen., 278 F.3d 1216, 1218 (11th Cir. 2002). If, however, "an applicant is unable to meet the 'well-founded

fear' standard for asylum, [s]he is generally precluded from qualifying for either asylum or withholding of deportation." Al Najjar, 257 F.3d at 1292–93 (citation and quotations omitted).

Here, Chen failed to establish that she has a well-founded fear of future persecution sufficient to establish asylum. For that reason, she cannot establish that she is entitled to withholding of removal under the INA or the CAT.

PETITION DENIED.