[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 10-12832 ; 11-10145
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 23, 2011
JOHN LEY
CLERK

Agency No. A099-927-058


RONG GUANG LIU,
SHUN WEN CHEN,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
_____

Before WILSON, KRAVITCH and BLACK Circuit Judges.

PER CURIAM:

In this consolidated petition for review, Rong Guang Liu and her husband

Shun Wen Chen ("the petitioners"), natives and citizens of China, petition this

court for review of the Board of Immigration Appeals' (BIA) affirmance of the Immigration Judge's (IJ) order of removal and denial of asylum[1] and the BIA's order denying their motion to reopen removal proceedings. Because we conclude that the BIA's determination is supported by substantial evidence and the record does not compel the conclusion that the petitioners were entitled to relief from removal, we deny the petition for review with respect to the underlying asylum claim. We also deny the petition for review as to the motion to reopen because (1) the petitioners have not shown that the evidence they sought to present was new, material, and unavailable earlier, and (2) Chen could have requested cancellation of removal during the earlier proceedings and failed to do so.

I. Background

Liu and Chen separately entered the United States without being admitted or paroled. Liu entered in September 1999; Chen's date of entry is unknown. They married in July 2000 and had their first son in 2001. In 2006, while Liu was pregnant with her second child, Liu and Chen filed identical affirmative

---

[1] The IJ denied asylum, withholding of removal, and relief under the United Nations Convention against Torture (CAT). In their petition for review, Liu and Chen do not challenge the denial of withholding of removal or CAT relief. In fact, they mention withholding of removal briefly by setting out the standard, but they do not argue they were entitled to withholding of removal. Thus they have abandoned these issues. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 (11th Cir. 2005).

applications for asylum, alleging that they would be subject to forced sterilization if they returned to China because they would be in violation of China's family planning policies with the birth of their second child.[2]  In 2007, the DHS issued notices to appear, charging the petitioners as removable under INA § 212(a)(6)(A)(i); 8 U.S.C. § 1182(a)(6)(A)(i).

At the removal hearing, Liu testified as follows: She had been born in Fujian Province and had come to the United States in 1999 to work.  She had two children born in the United States, and she feared that she would be forcibly sterilized and severely fined if she returned to China because she was now in violation of China's one-child policy.  She had learned of the policy from her mother-in-law and through newspaper and radio reports.  Both Liu's mother-in-law and her uncle had spoken with family planning officials in their respective towns and confirmed the policy.  Liu explained that if she returned to China, she would have to register the children in the household registry and would face a large fine that she and her husband could not afford.  Liu was aware of a sister-in-law and friends who had been forcibly sterilized under the policy in 1996, 2000, and 2003, although these women gave birth to their children in China.

---

[2]  Because the applications are identical and the cases were consolidated, we refer generally to Liu's application.

In support of the application, Liu submitted extensive documents including the 2007 State Department Country Report, which indicated that there had been no reports of forced abortion or sterilization in the last ten years and that all surgery required informed consent. The Report recognized, however, that some coercion to comply with family planning policies occurred through public pressure. The Report stated that U.S. officials were unaware of any policy mandating sterilization after the birth of two children abroad, and it explained that in the Fujian Province if children born abroad were not registered as permanent residents of China, they would not be counted under the family planning rules. With respect to fines, or "social compensation fees," the Report noted that there were wide variations in fines and citizens were permitted to pay in installments.

The IJ denied relief, questioning the authenticity of the Chinese documents, giving greater weight to the 2007 State Department Country Report, and finding that any fear of future persecution was speculative. The IJ further found that the economic sanctions did not rise to the level of persecution. The IJ concluded that the BIA's decision in *Matter of J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007) controlled.

The petitioners appealed to the BIA, which affirmed the IJ's decision. The BIA found that the petitioners had failed to show that they would be persecuted on

4

account of the birth of their two children. The BIA cited its recent decision in *Matter of H-L-H- and Z-Y-Z-*, 25 I. & N. Dec. 209 (BIA 2010), and gave more weight to the 2007 State Department Country Report. The BIA further concluded that the petitioners had not shown that any economic sanctions would rise to the level of persecution. A petition for review followed.

While that petition for review was pending, Liu and Chen filed a timely motion to reopen removal proceedings on the grounds that they had new evidence showing prima facie eligibility for asylum. They also sought to reopen the proceedings in order to file a new asylum application raising religious persecution claims and to seek cancellation of removal. To support their claim of religious persecution, the petitioners submitted the following: (1) a letter from Liu's sister-in-law, Yue Chen, explaining that she was a practicing Christian and had been detained and beaten by Chinese authorities because there was no religious freedom in China; (2) the 2007 State Department International Freedom Report, which indicated that they had been some abuses of religious freedoms and some members of unregistered churches have been detained and beaten; and (3) articles about abuses of religious freedoms. In support of their claim for persecution based on China's family planning policy, the petitioners submitted: (1) a 2009 report from ChinaAid and the 2009 Congressional testimony of Representative Tom Lantos;

5

(2) the 2009 Annual Report of the Congressional-Executive Commission on China, finding that China's policy violated international human rights, but recognizing that although coercive measures continued, implementation varied throughout the country; (3) numerous articles about China's one-child policy and the coercive measures the Chinese government used to implement it; (4) a report by Dr. Flora Sapio criticizing the State Department's 2007 Country Profile; (5) documents concerning another Chinese citizen, Renzun Yuan, who had two U.S.-born children and who was allegedly was sterilized after his removal to China; and (6) official documents from the various township websites confirming that sterilization was required for Chinese citizens who had children overseas.

The BIA denied the motion to reopen, finding that the evidence was not previously unavailable or unable to be discovered. The BIA also found that the petitioners had not sought cancellation of removal during the earlier proceedings and had not explained their failure to do so. Addressing the persecution claims, the BIA found that the petitioners had not shown that the evidence pertaining to China's one-child policy was unavailable earlier or that any new evidence would impact the outcome of their case. With respect to the request to reopen proceedings so that they could file a new asylum application based on religious persecution, the BIA found that the petitioners did not submit a new application

6

for relief as required, they had not shown they were prima facie eligible for relief, and they could not show that unregistered churches in China were subject to persecution in their locality. Petitioners have now filed a petition for review of the BIA's denial of the motion to reopen. We administratively consolidated the two petitions.

II. Standards of Review

When the BIA issues a separate opinion affirming the decision of the IJ, we review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion. *Huang v. U.S. Att'y Gen.*, 429 F.3d 1002, 1008 (11th Cir. 2005). To the extent the BIA's decision is based on a legal determination, we review the decision *de novo*. *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010). The BIA's "[f]actual determinations are reviewed under the substantial evidence test, and we 'must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283-84 (11th Cir. 2001)). "Under the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*). "Thus, 'a finding of fact will be reversed only when the record compels a

7

reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings.'" *Diallo*, 596 F.3d at 1332 (quoting *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006)). Accordingly, "even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi* 386 F.3d at 1029.

"We review the [BIA's] denial of a motion to reopen removal proceedings for abuse of discretion." *Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007). Our review "is limited to determining whether the BIA exercised its discretion in an arbitrary or capricious manner." *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319 (11th Cir. 2009). The BIA has discretion to deny a motion to reopen for at least three reasons:

> (1) failure to establish a prima facie case [of eligibility for asylum or withholding of removal]; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion.

*Li*, 488 F.3d at 1374 (alteration in original) (quotation marks omitted). Motions to reopen are especially disfavored in removal proceedings, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes

8

merely to remain in the United States." *I.N.S. v. Doherty*, 502 U.S. 314, 323 (1992).

III. Discussion

A. Asylum

Under the INA, an alien who arrives in, or is present in, the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The Attorney General of the United States or the Secretary of the Department of Homeland Security has discretion to grant asylum if the alien is a "refugee." *Id.* at § 1158(b)(1). The INA defines a "refugee" as:

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion.

*Id.* § 1101(a)(42)(A). Relevant to this petition, the INA expressly recognizes forced sterilization as persecution on account of political opinion:

> [A] person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

*Id.*; *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319-20 (11th Cir. 2009).

"The asylum applicant carries the burden of proving statutory 'refugee' status and thereby establishing asylum eligibility." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). Because Liu and Chen did not allege that they suffered persecution in the past, to meet this burden, they must show a "well founded fear" of such persecution in the future. *Id.* at 1230-31; 8 C.F.R. § 208.13(a)-(b). They are required to demonstrate a fear of future persecution that is both "subjectively genuine and objectively reasonable." *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008). The subjective component can be satisfied "by the applicant's credible testimony that he or she genuinely fears persecution," *De Santamaria*, 525 F.3d at 1007, while "the objective prong can be fulfilled by establishing that the applicant 'has a good reason to fear future persecution,'" *id.* (quoting *Ruiz*, 440 F.3d at 1257).

The petitioners argue that they have established a well-founded fear of future persecution based Liu's credible testimony and the documentary evidence they submitted. They argue that the weight of the evidence compels the conclusion that they are entitled to asylum and that the BIA failed to adequately explain its finding that their fear is not reasonable. In support of their claims, they cited other cases from this circuit remanding denials of motions to reopen removal

10

proceedings.  The petitioners also assert that the BIA failed to consider the letters from people in China who had been forced to undergo sterilization.  They further argue that the BIA erred when it concluded that the fines did not rise to the level of persecution.

Here, the record does not compel the conclusion that Liu and Chen established a well-founded fear that is objectively reasonable, and we conclude that substantial evidence supports the BIA's decision for several reasons.  First, the BIA adequately explained its decision when it addressed the general background documents and stated that it had routinely found this same evidence insufficient in other cases.  *Matter of H-L-H- and Z-Y-Z-*, 25 I. & N. Dec. 209 (BIA 2010).  The BIA is not required to discuss every piece of evidence, so long as it gives reasoned consideration to the evidence submitted.  *Morales v. INS*, 208 F.3d 323, 328 (11th Cir. 2000).  The BIA also addressed the petitioners' individualized evidence and found it insufficient because it either related to individuals who were not similarly situated to Liu or was entitled to little weight.  Liu and Chen have not pointed to any basis for distinguishing their case from the cases the BIA cited.

Second, this court's decisions granting review in petitions involving motions to reopen is inapplicable to the instant petition.  The cases involving

motions to reopen dealt with whether the BIA abused its discretion in refusing to reopen a previously denied petition for asylum. Thus, those decisions address only whether the aliens provided sufficient evidence of changed circumstances to warrant reopening a previously denied petition for asylum. They do not address the merits of the underlying asylum claim in the first instance.

Third, the record contains contradictory information about the status of the U.S.-born children in China. The State Department Country Report indicates that the U.S.-born children would not count towards the family planning limitations if they are not registered. Other documents indicate that U.S.-born children must be registered and thus would be counted. Additionally, although the background information indicates that forced sterilizations have occurred, the BIA explained that it has analyzed this same information in other published decisions and found it inadequate to demonstrate a well-founded fear that the aliens in each of those cases would be singled out for forcible sterilization upon returning to China having had more than one child. *See Matter of H-L-H- and Z-Y-Z-*, 25 I. & N. Dec, 209 (BIA 2010); *In re C-C-*, 23 I. & N. Dec. 899 (BIA 2006); *In re J-W-S-*, 24 I. & N. Dec. 185 (BIA 2007); *In re J-H-S-*, 24 I. & N. Dec. 196 (BIA 2007); *In re S-Y-G-*, 24 I. & N. Dec. 247 (BIA 2007). In light of this conflicting evidence, and under the deferential standard of review, the record does not compel a

12

conclusion that the petitioners established an objectively reasonable fear of persecution.

Additionally, many of the background documents Liu submitted relate to periods before 2002, when China's family planning regulations were apparently amended to provide for guidance on long-term and effective birth control measures as an alternative to the simple rule of "IUD for one birth, sterilization for two births."[3] There are also numerous documents that predate Liu's second pregnancy and the onset of her fear of persecution. Given the remoteness of these documents, they do not provide any evidence that the petitioners' fear is objectively reasonable.

Finally, the BIA properly concluded that the fines the petitioners could face did not rise to the level of persecution. *In re J-W-S-*, 24 I. & N. Dec. at 191 ("[e]forcement efforts resulting in moderate economic impact would not, in general, prove a well-founded fear of future persecution."). Although the petitioners submitted a copy of the fine schedule from Fujian Province, Liu's testimony consisted of nothing more than her self-serving statement that the fine would be severe. Additionally, the 2007 State Department Country Report

---

[3] *See Chen v. U.S. Att'y Gen.*, 389 Fed. Appx. 879, 884 (11th Cir. 2010) (unpublished).

confirms that individuals who cannot afford the fines may be allowed to pay in installments and that their wages cannot be garnished. Thus, the record does not compel the conclusion that the petitioners would be subjected to a fine rising to the level of persecution.

### B. Motion to Reopen

On review, we conclude that the BIA did not abuse its discretion by denying the motion to reopen. First, addressing the family-planning claim, the evidence the petitioners submitted was not material or unavailable earlier. Much of the evidence does not relate to Fujian Province, and none of the allegedly official documents were properly authenticated. Moreover, the BIA was permitted to reject Dr. Sapio's critique of the 2007 Profile and to rely on the State Department reports. *See Reyes-Sanchez v. U.S. Att'y Gen.*, 369 F.3d 1239, 1243 (11th Cir. 2004). In any case, the evidence submitted is unlikely to change the outcome of the underlying removal proceedings because none of the evidence presented establishes that Fujian Province applies coercive measures consistently or that the petitioners would be subject to such measures.[4]

---

[4] The petitioners' case is distinguishable from *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252 (11th Cir. 2009), and *Li v. U.S. Att'y Gen.*, 488 F.3d 1371 (11th Cir. 2007). In those cases, the petitioners submitted evidence establishing that there was increased enforcement of China's family planning policy in their hometowns. They also submitted first-hand accounts of forced sterilization. This court concluded that

14

Second, with respect to the religious persecution claim, although the petitioners submitted a letter from Liu's sister-in-law stating that she had been persecuted based on her religious beliefs, none of the other evidence submitted supported the petitioners' claims.[5] Additionally, the letter from Liu's sister-in-law identifies only a single instance that occurred almost a year before the petitioners raised a claim of religious persecution. None of the other documents shows that officials in Fujian Province are aware of the petitioners' religious beliefs or that the Chinese government would persecute Liu and Chen for their religious practices. Rather, the evidence submitted shows that treatment of unregistered churches varies throughout China. Thus, the petitioners failed to show prima facie

---

the evidence established changed country conditions to warrant granting an untimely motion to reopen. But the court did not address the merits of the motion. In the instant case, the court is not asked to consider changed country conditions to excuse an untimely motion to reopen. Moreover, the evidence submitted in this case was significantly less specific and thus was unlikely to change the outcome.

[5] The government asserted in its response to the motion to reopen that the religious persecution claim was untimely because the petitioners had been in the United States for more than one year and thus an asylum application raising this issue would be untimely. The petitioners now respond that the new claim is simply an amendment to their previously-filed asylum application and satisfies the requirements of 8 C.F.R. § 1003.2(c)(1). The purpose of a motion to reopen is not to raise new claims for relief. To the extent that the petitioners' raise a new ground for relief–religious persecution–an asylum application would be untimely. *See* 8 U.S.C. § 1158(a)(2)(b).

15

eligibility for relief based on religious persecution. Accordingly, the BIA did not abuse its discretion is denying the motion to reopen on this ground.

Finally, the evidence submitted failed to establish that Chen was prima facie eligible for cancellation of removal.[6] The Attorney General may cancel the removal of a non-permanent resident who

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). Under the regulations, a motion to reopen will not be granted

> for the purpose of affording the alien an opportunity to apply for any form of discretionary relief . . . if it appears that the alien's right to apply for such relief was fully explained to him or her and an opportunity to apply therefore was afforded at the former hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing.

---

[6] We have jurisdiction to consider this claim because the BIA denied cancellation on procedural grounds and not discretionary grounds. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2004).

8 C.F.R. § 1003.2(c)(1). Here, the BIA concluded that reopening the proceedings to enable Chen to seek cancellation of removal was not warranted because Chen had not established the procedural requirements for relief. The BIA noted that Chen had not raised the issue of undue hardship during the earlier proceedings and he had not explained his failure to do so. In his application for cancellation of removal, Chen indicated that his removal would be an undue hardship on his children, but he offered no explanation as to how. Accordingly, the BIA did not abuse its discretion in concluding that Chen had not met the procedural requirements for cancellation of removal.

**PETITION DENIED**.